■ MARY V. KOLES et al., Respondents, v PENN CENTRAL COMPANY et al., Appellants.—Judgment, Supreme Court, Bronx County, entered March 5, 1976, modified, on the law and the facts to the extent of: (1) reversing and ordering a new trial unless plaintiffs Mary Koles and Joseph Koles, within 20 days of service upon each of them by defendant City of New York of a copy of the order herein, with notice of entry, serve and file in the office of the clerk of the trial court a written stipulation consenting to reduce the judgment in their favor to $150,000 and $14,000, respectively, in which event such part of the judgment, as so reduced, is affirmed; (2) dismissing, on the law, the complaint against defendant Penn Central Company; and (3) reversing, on the law, New York City's judgment on its cross complaint against defendant Penn Central Company and said cross complaint dismissed. Except as so modified, the judgment appealed from is affirmed, without costs and without disbursements. Late in the afternoon of October 14, 1969, Mary Koles, exiting from Penn Central's Woodlawn Railroad Station, was injured when she stepped into a hole in an iron expansion plate which covered a 10-inch air space between the station property and the sidewalk on a bridge over the tracks. The trial court properly charged the jury as to what constitutes a sidewalk. The court instructed that if the plate was part of the sidewalk, the city was responsible for its maintenance even if the plate was constructed for the special benefit of the railroad; but if the plate was there for the special benefit of the railroad, the railroad also had a duty to maintain it even if it was part of the sidewalk. The court also instructed that if the jury found the plate to be part of the sidewalk, section 93 of the Railroad Law would require the city to maintain it. The jury returned a verdict in favor of plaintiffs against both defendants. On motion, the court awarded judgment over to the city against Penn Central, apparently on the theory that, upon a jury finding that Penn Central was liable, the special use doctrine rendered Penn Central solely liable for the damages. Essential to the jury's finding of liability against the city was the jury's factual determination that the expansion plate was part of the sidewalk. Evidence at trial supports such finding. Accordingly, section 93 of the Railroad Law frees Penn Central from any obligation for maintenance and renders the city solely responsible. Section 93 provides: "When a highway crosses a railroad by an overhead bridge, the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad corporation, and the roadway thereover and the approaches thereto shall be maintained and kept in repair by the municipality having jurisdic-

tion over and in which the same are situated". The section makes no exceptions or distinctions based upon ownership or special benefits doctrine. The section delineates the respective responsibilities of the railroad company and the municipality for the repair of bridges at overhead and underground crossings. (See *Pennsylvania R. R. Co. v City of Rochester,* 37 NYS2d 471, 473, affd 267 App Div 801, affd 293 NY 813.) Furthermore, while the expansion plate was necessitated by the erection of the station, the plate is not for the special benefit of the station but serves to protect both the station and the sidewalk from damage due to expansion and contraction in response to changing weather conditions. We are not aware of any case which has applied the special benefits doctrine where the municipality also has received benefit from the offending object. (See *Nicklesburg v City of New York,* 263 App Div 625, applying the special benefits doctrine where iron bars were embedded in a sidewalk to aid in the removal of ashes, refuse and other heavy materials from an apartment house; *Clifford v Dam,* 81 NY 52, involving construction of an opening in the sidewalk for coal deliveries; *Trustees of Canandaigua v Foster,* 156 NY 354, which involved grating constructed over a coal chute.) However, even if the special benefits rule were applicable, section 93 would supersede any application thereof. The record does not support a finding that Mary Koles was, as a matter of law, contributorily negligent. Reasonable men could differ as to whether plaintiff's acts were negligent in these circumstances. (See *Friedman v City of New York,* 25 NY2d 764.) "The failure to have in mind the existence of a dangerous condition at the time one encounters it, even though there had been knowledge of the condition in the past, presents a question of fact. It is for the jury to say whether the failure to have the danger in mind was the result of such poor memory or such inattentiveness on the part of the injured person as to charge her with falling below the standard of a reasonably prudent person." *(Washington v Longview Terrace Apts.,* 37 AD2d 809, 809–810.) As to the damages, the amounts awarded, even as reduced by the trial court, are excessive. Plaintiffs' own doctor testified that plaintiff Mary V. Koles was capable of returning to her calling as a law secretary. Her husband's special damages were only $3,940. While plaintiff did suffer a fractured hip, her recovery appears to be reasonably satisfactory. Accordingly, plaintiff's recovery should be limited to $150,000 and that of her husband to $14,000. Concur—Stevens, P. J., Birns, Lane and Nunez, JJ.; Capozzoli, J., dissents in part in the following memorandum: Capozzoli, J. (dissenting in part). We are not so exact in our ability to compute that we can say that $175,000 is wrong and $150,000 is correct. I can see no reason for interfering with the amount fixed by the trial court. Therefore, I dissent from the decision of the majority reducing the amount awarded to the plaintiff, Mary Koles to $150,000 and otherwise concur.